ISLAND MOUNTAIN
DEVELOPMENT GROUP

555 Old Hays Rd.
P.O. Box 470
Hays, MT 59527

Tel: 406.673.3031
Fax: 406.673.3023
islandmtn.com

February 3, 2022

Hon. Jeffrey Stiffarm, President
656 Agency Main Street
Harlem, Montana 59526-9455
Jeffrey.Stiffarm@ftbelknap.org

Re: IMDG Board of Directors

Dear Mr. President:

With this letter, the Island Mountain Development Group Board responds to the Fort Belknap Indian Community Council's request for information set forth in your February 1, 2022 letter to our CEO captioned "IMDG Board of Directors."

1. The terms of appointment for Board members Tracy "Ching" King and Christopher "Smiley" Guardipee are as follows:

    a. Tracy "Ching" King was appointed to the IMDG Board in February 2010, for an initial four-year term, which has been subsequently renewed twice, with his current term extending to January 6, 2024 as explained more fully below. He is also in his second term as the IMDG Board Chairman.

    b. Christopher "Smiley" Guardipee was appointed to the Board in February 2010, for an initial four-year term, which has been subsequently renewed twice, with his current term extending to January 6, 2024. He is in his second term as the IMDG Secretary/Treasurer.

2. The "expiration dates" associated with the current IMDG Board members' current terms are all January 6, 2024 because of the Council's reappointment of all of us to the Buffalo Horse, Inc. Board of Directors (as a mirror of the IMDG Board) effective January 6, 2020 in accord with FBICC Resolutions Nos. 181-2019 and 212-2019. Pursuant to those Resolutions, the Council adopted the "BHI Restructure" plan whereby the Council directed that (1) IMDG paid John Chenery $250,000 to buy out his shares in the company, gifted those shares to the Tribes to make the Tribes the exclusive owner of BHI; (2) IMDG repaid the $500,000 debt to the Investment Board on which Chenery had defaulted; (3) the Secretary/Treasurer accept all the amended and restated all the BHI corporate organizing documents; and (4) IMDG serve as the exclusive Manager of BHI with $4 million of investment in restoring its financial health and pursuing new business and spin-off 8(a) companies. All the Board appointments became effective on the date IMDG gifted the stock to the Tribes and the amended and restated organizing documents were filed with and accepted by then-Secretary/Treasurer Fox.

EXHIBIT B



353 Old Hays Rd.   Tel: 406.673.3031
P.O. Box 470   Fax: 406.673.3023
Hays, MT 59527   islandmtn.com

In the authorizing Resolution No. 212-2019, the Council established the timeline for when the old BHI Board would be removed and the new BHI Board appointed (e.g., not until the stock transfers were completed and the amended organizing docs were accepted by the Secretary/Treasurer to make BHI a Tribal entity): "WHEREAS, following the Board Removal, the Council desires to appoint the IMDG Board of Directors as the BHI Board of Directors such that the appointment or removal of an individual to the IMDG Board of Directors will result in the appointment or removal of the same individual to the BHI Board of Directors (the 'BHI Board Appointment')." The date of the BHI Board Appointment was January 6, 2020.

The amended and restated BHI Bylaws were designed to be largely identical to the IMDG Bylaws as the Council's standard form for Tribal corporations. However, the Bylaws replaced the usual Article IV (Board Membership) language setting out the staggered terms language to "The membership of the Board will be those persons who are on the board of directors of the Fort Belknap Planning and Development Corporation d/b/a Island Mountain Development Group ('IMDG')." The IMDG Bylaws Article IV provide that everything after the initial Board appointments to the company "shall be construed as a four (4) year term." The Council Resolutions and the Bylaws are all clear that the Council desired the BHI Board to be a mirror image of the IMDG Board, but the clock didn't start on the Board's service until January 6, 2020, but when it did, the IMDG Bylaws require that each of us have a four-year term. The Bylaws' use of the word "shall" is mandatory and not permissive – the Board terms have to be four years and they did not start until January 6, 2020.

Background on Board Terms

We also wish to provide the Council with further background and context regarding the Board terms, which we will do next, followed by our response to your request number 3 related to employee gross salaries.

First, the Board appreciates the solemn legal obligations set out in IMDG's Corporate Charter, Articles of Incorporation and Bylaws. As you know, IMDG is simply the doing-business-as name for the Fort Belknap Planning and Development Corporation ("PDC") incorporated by the Fort Belknap Indian Community Council in 2006. PDC Resolution 2012-01. The Articles of Incorporation and the Bylaws are, by their own plain language as adopted by the Council, documents of Tribal law. The PDC Bylaws vest the Board with the authority to conduct "all affairs of the company," including "the filling of expired or unexpired vacancies on the Board." Article III, Section 3. The Bylaws provide that "All Board members shall serve until a replacement is selected to fill their position." Article IV, Section 3. In other words, the Board seats are not like elected Council positions; they continue until replaced and may be renewed, as they often have been in the past, and ratified by the Council.

The Board has been reviewing and considering issues with respect to Board terms and



333 Old Hays Rd.
P.O. Box 470
Hays, MT 59527

Tel: 406.673.3031
Fax: 406.673.3023
islandmtn.com

renewals and potential changes to the Bylaws to recommend to the Council for about a year. As the Council and the Board have discussed many times, there are improvements that might reasonably be made to the companies' organizing documents, but any such changes require agreement by the Council and the Board (per Article XIII of the Bylaws) and risk disturbing the careful balance the organizing documents struck which has been the foundation for IMDG's tremendous success in delivering on its mission since 2009.

These are weighty considerations. As you know, IMDG now employs more than 350 people, the vast majority of whom are Tribal members, both on the Reservation and in Billings. Those jobs support thousands of Tribal members in households of IMDG employees, with $20,748,264.30 in total compensation in 2021 for IMDG and BHI employees, which circulate within the Fort Belknap economy and surrounding areas. Those jobs also drive the exponential growth of revenue – to more than $175 million in 2021, resulting in our estimated net profit-sharing to the Tribes of more than $3 million for the year, a number that we forecast to continue to grow in the coming years. Those jobs have also supported our diversification—from the custom-designed home business, to the construction company and IT business, to realty holdings, to on-Reservation collaboration with Housing on Eagle Valley and other developments (including committing $900,000 to Housing funding) and support for the Aaniih Nakoda Integrated Behavioral Health program and Tribal Health's 638 self-determination contract with Indian Health Service. We have taken on numerous technical assistance efforts under the Council's direction, including management of the Anaakyaaniiin Wellness Center and support for Council members' participation in more than 90 federal consultations in 2020 and 2021. Our hearts are full to have your trust and confidence. We are committed to making things better for our people.

Perhaps nowhere has our capacity expanded as much as it has with our rescue of Buffalo Horse, Inc. In August 2019, following outreach from BHI's former management about taking over the then-failing BHI, the IMDG Board presented a rescue plan to the Council. At that time, BHI had one contract for $400,000, had defaulted on its $500,000 loan from the Investment Board (which loan had been secured by the Tribes' tax revenues), allegedly in arrears hundreds of thousands of management fees dollars to Chenery and was also at risk in sexual harassment litigation because the entity was not properly structured as a sovereign entity by Chenery. The BHI Restructure the Council approved made the IMDG Board the BHI Board, understanding that to restore BHI would require substantial capital investment, as well as extensive background checks and expertise development to satisfy federal contracting requirements and security clearances. The resetting of the BHI Board was the only way to save BHI's contracts and secure any new ones.

Happily, the BHI Restructure has been very successful. We brought on someone with great experience, Felix McGowan (Fort Peck) as the Director of Government Contracting and have been awarded multiple new contracts and also developed a very fruitful joint venture with another 8(a) company. In order to keep BHI on firm footing, both our joint venture partner and our federal contracting customers require the Board's consistency and routine background check



**ISLAND MOUNTAIN**
DEVELOPMENT GROUP

353 Old Hays Rd.
P.O. Box 470
Hays, MT 59527

Tel: 406.673.3031
Fax: 406.673.3023
islandmtn.com

investigations and clearances.

All that said, the Board understands it is not ideal to have all our terms expire on the same date (as resulted from the BHI Restructure) and risk losing that expertise and consistency. Therefore, we have been discussing proposals we might make to you to amend the IMDG organizing documents to protect both IMDG and BHI, to create staggered terms, and to ensure the continued focus on professional qualifications that will benefit the companies and in turn, benefit the Tribes with continued increased revenues and jobs creation.

Again, Article IV, Section 3 of the Bylaws provides that "All Board members shall serve until a replacement is selected to fill their position." In the past, some Board members have been unwilling to continue their service after the expiration of their terms or their decisions to resign from the Board. But when there is a vacancy, the process for filling it is clear under the IMDG Bylaws. The Bylaws provide, in Article V, Section 2, that the Board must "supply the Council with a list of nominees of qualified and eligible persons" to fill Board vacancies. The Board advertises when vacancies arise and then conducts background checks on the applicants and makes recommendations to the Council as to individuals they believe will best help make the company successful in its mission. Following the due diligence efforts, the Board supplies the Council with a list of multiple potential nominees per vacancy who meet the requirements for federal contracting, vendors, lenders and other entities that are important to the success of the companies. Article V, Section 2 of the Bylaws requires that: "From among the persons nominated, the Council will select one person for membership on the Board to fill the expired vacancy."

We do not have any current vacancies. As we indicated, the Board is working on a proposal to bring to the Council to ensure that future Board transitions are smooth and safeguard these important companies for the Tribes.

Salary Information Request

Your letter asks for the gross salaries of IMDG employees. In 2021, that number was $20,748,264.30 for IMDG and BHI combined.

Your letter also states that you are requesting a breakdown by position and salary. The company has confidentiality obligations in its employment contracts that prohibit such by-position disclosure.

As you might surmise, there has long been a lot of anxiety among IMDG employees regarding salary disclosure. This is in part because inaccurate information was disseminated in the community in the past, leading to personal attacks on former employees and even on those employees' children at school. Disclosure of any employee's personal information is a huge risk to our recruitment and retention efforts so we do not do it.



333 Old Hays Rd.  Tel: 406.673.3031
P.O. Box 470  Fax: 406.673.3023
Hays, MT 59527  islandmtn.com

The Bylaws provide that the CEO has "full authority to hire and fire additional staff for the company." Article IX, Section 1(C). The company's approach has been to strive to compensate our employees fairly and competitively by position. This includes not only wages, but also, per the Board's direction, maximizing employee benefits such as private health insurance, higher education stipends, workout facilities, behavioral health access and cultural wellness opportunities. We have employees who have received their undergraduate degrees and are pursuing graduate degrees fully supported by IMDG. That is a huge source of pride for us.

Some Thoughts on Continued Success

As Dr. Joe Kalt of the Harvard Project on American Indian Economic Development shared when he visited with the Council in summer 2021, it is a foundational principle of tribal economic success to keep politics out of tribal enterprises. A recent article, *What Determines Indian Economic Success? Evidence from Tribal and Individual Indian Enterprises*" summarizes the issues well:

> Instead, it was the existence of a *non-politicized* board that mattered to success. Indeed, in this sample, all enterprises with a profit index score of zero lacked an independent board. The implication is that a board that serves as a buffer between the (inherently) political tasks of setting tribal direction and strategy and the more specialized and technical tasks of managing enterprises contributes to success. This result from the statistical data is congruent with the results from NCAI's case studies, which indicate that keeping political actors and their constituents' immediate concerns out of business decisions is beneficial to enterprise health.
>
> A recurring theme in the surveys and in NCAI's case studies is that effective enterprise and tribal governance matter to success. Enterprises that are insulated from political pressures are more successful. Where political leaders can interfere directly in enterprises, pressures tend to mount for them to do so—to the detriment of performance. Conversely, where mechanisms exist to separate strategic (that is, political) decision-making from operational (that is, managerial) decision-making, enterprises seem to perform better.
>
> Tribal policymakers can ensure that a separation of functions exists between civic governance and corporate governance. Around the world, government-owned businesses face challenges that other enterprises do not, and this places a premium on structures of good corporate governance.



353 Old Hays Rd.
P.O. Box 470
Hays, MT 59527

Tel: 406.673.3031
Fax: 406.673.3023
islandmtn.com

The entire article is attached, along with another leading article, but the conclusions are nothing new. Indeed, these basic concerns are exactly why the Council in 2006 enshrined the separation of Board nominating powers and Council appointment solely from among those nominated in Article V of the PDC Bylaws.

The Board strictly adheres to these principles and is always focused on our duties of care and loyalty to our Tribes as the sole shareholder of both IMDG and BHI. We want you to know that we take our appointments, and following all the Bylaws and other Fort Belknap laws, extremely seriously. As we say, we are reviewing the Bylaws and formulating a proposal to improve them. We plan to present that proposal in the coming months, along with the 2021 audit report, annual report and final profit-sharing check. We anticipate that presentation will occur at the March 2022 Executive meeting.

We hope you have found this information helpful. We are willing to meet with the Council any time for further discussion.

Warmly and respectfully,



Tracy "Ching" King, Chairman
Kenneth "Tuffy" Helgeson, Vice Chairman
Christopher "Smiley" Gardipee, Secretary / Treasurer
John Hawley, Board Member
Ramona Horn, Board Member
Harold "Jiggs" Main, Board Member

cc: Terry Brockie, CEO